Good morning, Justices. May it please the Court. My name is Tim O'Gorman. I'm here representing ABF Freight in this appeal. I'll be honest, this is my first time doing this, so maybe I would ask you guys to go a little bit easy on me, but I don't know. We usually go easy on everybody, don't we? Well, I would appreciate the same consideration. May I make a suggestion? Yes. Since it is your first, can sometimes you talk a little softer, speak up loudly? Yes, Justice, I will. Thank you. I'm getting older and I'm experiencing issues. I'll do my best. Thank you again, Justices. I will be as brief as possible. This is a case with an over-the-road truck driver alleging a repetitive-type injury. It is a bilateral carpal tunnel case. There are two different doctors, the treating doctor, Dr. Schlenker, and the Section 12 examiner, hired by Respondent, Dr. Papierski. Naturally, the treating doctor testified and the Section 12 examiner found the opposite. Let me just start, and you know this is a manifest way. Absolutely, Your Honor. How would an opposite conclusion be clearly apparent based on that? Your Honor, the reason Respondent takes exception with the Commission's decision and the reason that the Commission's decision is against the manifest way of the evidence is, I will read you the quote, it's 356 in the record, it's straight out of the Commission's decision in explaining their basis for their award of benefits. It says, even though he did not review the written job description or view a video, Dr. Schlenker's understanding of Petitioner's job duties was substantially similar to that which Petitioner testified. As such, we find that Dr. Schlenker's opinion is credible based on an accurate understanding of Petitioner's duties. The Commission doesn't make mention that they feel Petitioner's testimony was the same as what his job duties actually were. The Commission's reliance on Dr. Schlenker's opinion is the fact that he testified to the same subjective history and explanation of job duties as he told the doctor. From Respondent's perspective, that's a lack of common sense fact finding. They are ignoring the evidence as a whole, which includes evidence of a job duty video, which is, portrays, which is undisputed, portrays Petitioner's job duties that they can look at. Did the Commission see it? Was it in evidence? It was, yes. So they obviously considered it? I would argue that they did. Was there any evidence of record that what he told the doctor his job duties were was different than what they actually were? The actual testimony, we would argue, Your Honor, is that it's... No, no, no. Listen to the evidence in the record that what he told the doctor his job duties were were different than what his job duties actually were. Uh, no. No, there's none. In that particular case, your argument is missing a chain in the logic. Because the doctor says, well, I relied on what he told me the job duties were. Unless there's evidence in the record that what he told the doctor weren't his job duties, what's wrong with the doctor's opinion? What's wrong with the doctor's opinion, Your Honor, is that it's not just... When a Petitioner's describing their job duties to a doctor or the Commission, and especially this holds true in a repetitive type trauma case where the job duties are gripping, using a stick shift, that type of stuff, it's... I would argue it doesn't give an accurate portrayal of what the job actually entails. The force of the gripping, what a Petitioner might look like while he or she is performing the job, and the fact that there was a job video which provided that illustration, which appears to be ignored by the Commission. Why do you say it appears to be ignored? Well, when they're describing what they're basing their opinion on, they don't mention... They don't even mention Petitioner's job duties. They mention the fact that Petitioner's testimony was the same to the Commission as the doctor. There's no finding of fact that the Petitioner's job duties were actually... Why didn't you ask them a question? You had a right to do that, didn't you, under the Act? You could have sent them a question, and asked them to answer the question, or obligated to answer the question if you asked it timely. Did you ever ask it? We did not, Your Honor, no. Did you ever cross-examine the Petitioner on what he told the doctor his job duties were? Unfortunately, Your Honor, I was not the one who was able to... Well, I mean, it's not you, but the question is, is it the record? It's not there. Right. You know, the argument that you're making, it can succeed in certain circumstances where the basis of the expert's opinion is legally invalid. And it doesn't sound like that's the circumstance here. There wasn't any challenge to the admissibility of Schlenker's opinions because the bases were legally insufficient. Here, you're just telling us that it's not a persuasive opinion because what Schlenker based his opinion on wasn't the same as what the other doctor based his opinion on. And then you're getting to wait, right? Precisely. Okay. You have another issue here. Who decides to wait? I'm sorry, Your Honor. Who decides to wait to give the evidence? The Commission does. The Commission does. Clayton testified, right? I'm sorry, I... Clayton testified in Yes. Did the Commission have any credibility preferences with the claimant? No, it did not appear that they did. Okay. Well, they also had the video. They did. So they heard the testimony, saw the video. Don't you think that if they thought that the claimant's description was different from the video, they would have said so? I would imagine that they would, and I would also expect them to make the same determination if the opposite was true. If I wouldn't be standing here today, if the Commission in the decision said Petitioner's testimony to his job duties was accurately portrayed in the video or the Commission believes that the video... You wouldn't ask them those questions. You have a right to ask them, but you've got to ask them timely. What do you get, five questions or something like that you can ask them? You know, the problem here is the claimant could have testified to the polar opposite of what the video actually depicted as the duties. And the Commission could have sided with the claimant's version as to what the job duties were. So it wasn't that the claimant here had to dovetail his testimony with the video. It's just simply what evidence did the Commission put the most credence in? And, you know, like I say, it could have been that the claimant's testimony didn't bear any resemblance at all in regards to the job duties as to what was in the video. You know, here, though, it was substantially dissimilar, it sounds like. Well, the Commission thought so, yes. And to be honest, Your Honor, I mean, that really does sum up the rest of my argument. I don't think I have... And we appreciate your honesty. Your Honor, thank you very much for your time. I appreciate it. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. My name is E.B. Bednarz and I represent the Appellate Units for John Cravens in this matter. And this is your first argument? I'm not sure what gave it away, Your Honor. Congratulations to both of you. And you might want to keep it simple and just concentrate on what the standard of review is and why it's not an appellate conclusion. Well, that'll be fine because in my view, this is a very simple case. As we know, this Court is tasked with evaluating the Commission's decisions, specifically whether the Commission had a reasonable basis for finding that Mr. Cravens' job duties contributed to the development of his carpal tunnel syndrome. Mr. Cravens was an over-the-road truck driver. He testified as to his job duties shifting the manual transmission, gripping the steering wheel, bearing with the vibrations. And he conveyed these descriptions to Dr. Schlenker. Dr. Schlenker opined, to a reasonable degree of medical and surgical certainty, that those job duties did in fact contribute to the development of that carpal tunnel syndrome. The Commission found Dr. Schlenker more credible than the appellant's retained expert, Dr. Popierski. And at the end of the day, this case boils down to our doctor versus their doctor. Plus the claimant's testimony. Plus the claimant's testimony. But they found both. Correct. Respectfully, the Commission did make the determination that Dr. Schlenker was more credible than Dr. Popierski. And the Commission has defined her fact. For those reasons, the record contains sufficient evidence to support the Commission's findings that there was that causal connection. And I ask that this Court affirm the Commission's decision. Thank you. Counsel, you may report. Well, thank you, counsel, both for sharing your initial experience with this Court. And I think you have a great future, both of you, ahead of you.